BENJAMIN B. WAGNER
United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2730
Facsimile:   (916) 554-2900

JOCELYN SAMUELS
Acting Assistant Attorney General
CHIRAAG BAINS
Trial Attorney
Civil Rights Division
U.S. Department of Justice
601 D Street, NW
Washington, DC 20530
Telephone:  (202) 514-5259
Facsimile:   (916) 514-8336

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>BILLY JAMES HAMMETT, ET AL.,<br><br>                              Defendants. | CASE NO.  13-CR-0011 JAM<br><br>GOVERNMENT'S SENTENCING MEMORANDUM<br><br>March 25, 2014<br>TIME: 9:45 a.m.<br>COURT: Hon. John A. Mendez |

## I.      <u>INTRODUCTION</u>

The Government respectfully submits this memorandum to inform the Court of the Government's sentencing recommendation as to defendant Billy James Hammett and the basis for that recommendation.  The defendant is scheduled to be sentenced on March 25, 2014.

Defendant Hammett was charged in a three-count indictment on January 16, 2013, for his role in a racially motivated assault against a white man and African American woman that occurred on April 18, 2011, in Marysville, California.  On December 17, 2013, he pleaded guilty to Count 2, violation of the Shepard-Byrd Hate Crimes Prevention Act, 18 U.S.C. § 249.  His co-defendants, Perry Sylvester

1    Jackson and Anthony Merrell Tyler, pleaded guilty to Count 2 on December 17, 2013, and March 11,

2    2014, respectively.  The plea agreement entered into between defendant Hammett and the Government

3    is an agreement pursuant to Rule 11(c) (1) (C) , in which the parties agreed to the calculation of an

4    offense level under the sentencing guidelines.  Hammett is the first of the three defendants to be

5    sentenced in this case.  It is likely that he has the highest criminal history score of the three defendants.

6          As discussed further below, the Government and the defendant have stipulated to the applicable

7    provisions of the Sentencing Guidelines, producing a total offense level of 21.  The Pre-Sentence Report

8    ("PSR") calculates the defendant's criminal history category as V.  Thus, the applicable guidelines range

9    is 70 to 87 months.  The Government and the defendant have agreed not to seek any departure or

10   variance from this range.  U.S. Probation recommends a sentence of 80 months imprisonment.  For

11   reasons explained herein, the Government recommends a sentence of 70 months.

12             **II.        SENTENCING PROVISIONS IN THE PLEA AGREEMENT**

13         The Government and defendant Hammett entered several stipulations as to sentencing in the Plea

14   Agreement.  C.R. 43 (Plea Agreement, filed 12/17/2014).  In Part VI.B of the Plea Agreement, the

15   parties stipulated that the base offense level is 14 under U.S.S.G. § 2A2.2(a).  The parties further agreed

16   to the addition of four levels under § 2A2.2(b)(2)(B) because a dangerous weapon—here, a crowbar—

17   was used; three levels under § 2A2.2(b)(3)(A) because victim R.C. sustained bodily injury; and three

18   levels under § 3A1.1(a) because the defendant intentionally selected the victim because of the actual or

19   perceived race and color of any person.  The stipulated adjusted offense level, therefore, is 24.

20         In Part III.B.2 of the Plea Agreement, the Government agreed to recommend a three-level

21   reduction if Defendant Hammett clearly demonstrated acceptance of responsibility for his conduct under

22   U.S.S.G. § 3E1.1.  This reduction makes the agreed total offense level 21.

23         In Part VI.B.7 of the Plea Agreement, the parties indicated their belief that Defendant Hammett's

24   criminal history category is IV.  However, the parties expressly noted that criminal history will be

25   determined by the Court and that if the Court calculates the criminal history category differently, "the

26   stipulated sentencing range contemplated by the parties will change accordingly."  Plea Agreement at

27   VI.B.7.  (Separately, the parties provided that the agreed range should not change based on § 4A1.3, the

28   guideline for departures based on inadequacy of the criminal history category.)  As discussed below, the

Probation Officer determined that the defendant's criminal history category is in fact V.  If the Court adopts the PSR's findings, the stipulated applicable sentencing range would be 70 to 87 months.

Significantly, the parties further agreed in Part VI.B of the Plea Agreement not to move or argue for any departure from the Sentencing Guidelines or any variance under United States v. Booker, 543 U.S. 220 (2005).  Defendant Hammett specifically agreed that a sentence within the applicable guidelines range would be a reasonable sentence and that he would not seek a sentence outside of the range based on 18 U.S.C. § 3553.

Finally, the Government agreed in Part III.B to recommend that the defendant be sentenced to the low end of the applicable guidelines range.

### III.   THE PRESENTENCE REPORT

In the PSR, the U.S. Probation Officer reviews the facts of the offense and calculates the applicable guidelines range.  Consistent with the stipulations in the Plea Agreement, the PSR calculates the adjusted offense level to be 24.  PSR ¶ 28.  The PSR includes increases for use of a weapon (a crowbar) and injury to the victims. PSR ¶¶ 21-22.  In also includes a three level upward adjustment for hate crime motivation under section 3A1.1.  PSR ¶ 25.  It credits the defendant with a three-level reduction for acceptance of responsibility.  PSR ¶¶ 17, 30-31.  The PSR also reviews the defendant's prior criminal conduct and concludes that his criminal history category is V.  PSR ¶¶ 34-48.  Accordingly, the PSR determines that defendant Hammett's guideline imprisonment range is 70 to 87 months.  PSR ¶ 74.  In addition, the PSR notes that victim R.C. is due $175 for the cost of replacing his car's windshield, which defendant Tyler shattered during the attack.  PSR ¶¶ 15, 83, 98.

Ultimately, the PSR recommends a prison sentence of 80 months, 3 years of supervised release, restitution of $175, and a special assessment of $100.  PSR ¶¶ 100-102.

The Government has no objection to any statements of material fact or policy statements contained in, or omitted from, the PSR.  The Government agrees that the defendant is entitled to a three-level reduction for acceptance of responsibility.  As defendant Hammett timely notified the Government of his intention to plead guilty, permitting the Government and the Court to conserve resources, the Government now moves under § 3E1.1(b) for the full three-level reduction.

## IV.   § 3553(a) FACTORS

In sentencing the defendant, the Court must consider the factors listed in 18 U.S.C. § 3553(a), which are discussed in the PSR at ¶¶ 89-99.  Among the important factors are the nature and circumstances of the offense, the history and characteristics of the defendant, and, relatedly, the impact of the crime on the victims.  The Government provides the following information to assist the Court.

### A.   Salient Facts of the Offense of Conviction

The facts uncovered by the Government's investigation show that Defendant Hammett and his co-defendants' assault on the victims was unprovoked and based on race.

R.C., a white male, entered the Full Stop convenience store parking lot in the company of three African American women, S.L., L.F., and G.W.  R.C. rode in the front passenger seat of his green car, which was being driven by S.L.  L.F. sat in the back seat.  G.W. drove a second, white car.  The two cars pulled into the parking lot together.  Observing this, Defendant Jackson yelled, "Nigger lover."  One of the defendants made the statement, "What's that white boy doing with those niggers?"  PSR ¶ 4.

Surveillance video from a camera in the parking lot of the store depicts the attack that immediately followed.  The relevant video clip is 3 minutes and 41 seconds long.  The Government will have the video at sentencing and can play it should the Court wish to see it.

L.F., the backseat passenger in the green car, left the area, and G.W., the driver of the white car, went into the convenience store.  As victims S.L. and R.C. sat in the parked green car, the defendants approached.  Defendant Hammett walked to the driver side and immediately pulled on the door handle, trying to open it.  He then bent down and spoke to S.L., asking her what was in the car.  PSR ¶ 6. According to a later statement by S.L., Hammett said, "I like your car, nigger."

While Hammett had the attention of both S.L. and R.C. on the driver side, Jackson quickly approached the passenger side with his arm pulled back and punched R.C. in the head twice through the



*Jackson (left) strikes victim R.C. through passenger window while Hammett (right) has R.C. and S.L.'s attention on driver's side*

open window.  R.C. frantically tried to put the car in reverse.  Meanwhile, Hammett succeeded in opening the driver's door and began kicking S.L. in the chest.  Tyler then smashed the front windshield twice with a crowbar, causing the glass to shatter while S.L. and R.C. were inside.  PSR ¶¶ 6-7.



*Tyler smashes windshield with crowbar as Hammett kicks victim S.L. and Jackson opens victim R.C.'s door*

Jackson opened victim R.C.'s door and kicked him.  R.C. then fled from the car, backpedaling into the parking lot.  At the same time, S.L. got out of the driver seat, reaching toward Hammett's face to defend herself, and then sought refuge inside the store.  As she fled, Hammett punched her in the back of the head.

Seeing Hammett attempt to enter the green car, the backpedalling R.C. rushed at Hammett and struck him from behind.  The three defendants then attacked R.C.  Jackson landed several punches, as Hammett kicked R.C. and Tyler swung the crowbar at him.  The defendants pursued R.C. as he fled out of the surveillance camera's view.  PSR ¶ 8.

R.C. sustained injuries, including abrasions to both knees and his right forearm, and paid $175 to replace his windshield.  PSR ¶ 9.  S.L. later said she sustained bruising to her chest.

The investigation established that, notwithstanding R.C.'s statement to the contrary after later receiving threatening phone calls, the defendants and victims were strangers.  They had no prior history. In sum, the evidence demonstrates that the attack was unprovoked, targeted victims with whom the defendants had no prior history, and was motivated entirely by racial bias.

### B.    Defendant Hammett's Characterization of the Facts

According to the PSR, although the defendant has admitted guilt, he has provided through his attorney an account of the incident that differs in parts from the Government's understanding.  The

Government views the defendant's gloss on the facts as inconsistent with the evidence.

Defendant Hammett claims that when he kicked victim S.L., he was trying to kick an item out of her hand, and that she struck him in the face with an unknown object. He further claims that he suffered a facial laceration, which produced a scar, and that he responded by striking S.L. once. PSR ¶ 18. The video clearly establishes, however, that Hammett did not act in self-defense. When he approached S.L.'s side of the car, he immediately tried to open her door. Once he opened the door, he began to kick at her. At the same time, she reached outward to defend herself. The video shows her move her hand toward Hammett's face, but she does not appear to make contact. Hammett then struck her in the back of the head as she fled.

Defendant Hammett similarly minimizes his role in the attack on victim R.C. He claims that he did not pursue R.C., that he stopped Tyler from striking R.C. with the crowbar, and that he only attempted a single kick at R.C. before falling down. Hammett further notes that R.C. struck him from behind when he tried to enter the vehicle. PSR ¶ 18. The video makes plain, however, that R.C. struck Hammett in defense of his property once he saw Hammett attempt to get into the driver's seat of the car. And all three defendants then can be seen pursuing Chase. Hammett attempts to kick R.C. twice, not once, and the three men chase R.C. out of the camera's view. R.C. told responding officers that the assailants pursued him to a nearby intersection, where he fell and they again punched and kicked him. Finally, it is far from clear in the video that Hammett protected R.C. from Tyler's crowbar. More likely, Hammett was trying to either create space to strike R.C. himself, or prevent Tyler from hitting Jackson, whose body was close to R.C.

Ultimately, however, defendant Hammett admits to the essential facts. He stated in writing to U.S. Probation, "I accept responsibility for my conduct as described in the factual basis to the plea agreement." PSR ¶ 17. The Government does not understand him to be claiming self-defense, or otherwise disputing the essential elements of the crime.

### C.    History and Characteristics of the Defendant

The Government urges the Court to take into account defendant Hammett's history of criminal behavior and, in particular, the racial bias behind much of his prior offensive conduct.

As noted in the PSR, the defendant has an extensive criminal history. Most seriously, Hammett

was convicted in 2006 of assault with force likely to produce great bodily injury, with a gang

enhancement.  The conviction stemmed from his unprovoked assault of a 72-year-old African American

man.  Hammett wore a t-shirt with "SS" lightning bolts (a white supremacist symbol) and the words

"Whitey Forever" and made comments about hating "old people, blacks, and Jews" while walking in

downtown Marysville.  In front of several witnesses, he approached the victim, a stranger, and began

assaulting him.  Hammett punched him two times, knocking him to the ground.  Hammett proceeded to

kick the victim several times in his face, head, and torso before fleeing and changing his shirt to avoid

detection.  The victim's eyes were swollen shut and bruised, and he sustained a laceration below one

eye.  PSR ¶ 43.  Hammett was sentenced to six years.  After being paroled, he violated his parole in

February 2010.  He was still on parole when he committed the instant offense against victims R.C. and

S.L.  PSR ¶¶ 43, 46.  Hammett was placed on absconder status when he fled law enforcement after

committing the instant offense.

        As an adult, Hammett has also been convicted twice for driving under the influence and once for

contributing to the delinquency of a minor.  PSR ¶¶ 41-42, 44.  Hammett has been arrested for other

offenses, for which he was not convicted but agreed to pay restitution as part of a separate plea.

Specifically, in 2004 he was arrested for punching a man and rendering him unconscious while a friend

stabbed another person in the stomach with an object resembling a screwdriver or ice pick.  PSR ¶ 50.

In 2005, Hammett was arrested for assaulting a man who was sitting in a truck.  Hammett approached

the truck, reached inside, and struck the victim on the forehead with a beer bottle.  He then opened the

door and punched the victim several times.  When the victim fled, Hammett got into the driver's seat.

PSR ¶ 51.  Hammett's arrest record includes yet further evidence of criminal conduct.  PSR ¶¶ 53, 54.

        In addition, the Government is aware of other evidence that indicates a pattern of racial hostility

that has motivated much of the defendant's criminal conduct.  Hammett has several racial tattoos: "white

power" in large letters across his abdomen, a large swastika on the right side of his torso, and "skinhead"

written in stylized letters along with brass knuckles across the top of his back.  PSR ¶¶ 12, 58.  Hammett

has admitted on prior bookings to being affiliated with white supremacist groups.  As recently as July

2012, he told a classification officer that he was a member of the group "Supreme White Power," and in

February 2010, he acknowledged being a skinhead gang member.  It should be noted that Hammett's co-

1   defendants likewise have racial tattoos and have been known by local law enforcement to associate with

2   white supremacist street gangs.  Jackson has the words "white power" written in large block letters on

3   his shins.  PSR ¶ 12.  Tyler has a tattoo of the words "white pride" down the back of his arms and a

4   swastika on his right upper arm.  Such evidence of racial animus would have been admissible at trial,

5   see, e.g., United States v. Allen, 341 F.3d 870, 888 (9th Cir. 2003) (upholding admission of skinhead

6   evidence, including photographs of the defendants' tattoos, to prove racial animus in a prosecution under

7   18 U.S.C. § 245), and should likewise be taken into account at sentencing under § 3553(a)(1).

8        **D.**    **Impact of the Offense on the Victims**

9        To fully understand the nature of the offense, the Court should also consider its impact on the

10   victims.  The case law is clear that consideration of such evidence is permissible under § 3553(a),

11   typically under subsection (1) or (2).  See United States v. Christensen, 732 F.3d 1094, 1104 (9th Cir.

12   2013) (approving the district court's consideration of victim statements about the "life-destroying

13   impacts" of the defendant's crime because the information reflected on the "intangible nature of [the

14   defendant's] conduct" and because it was relevant to evaluating the seriousness of the offense, the need

15   to provide deterrence, and the need to protect the public from the defendant); United States v. Rangel,

16   697 F.3d 795, 803-04 (9th Cir. 2012) (consideration of impact on victims is appropriate under §

17   3553(a)); United States v. Rodriguez, 509 F. App'x 848, 2013 WL 535806, at *3 (2013) (same, based on

18   both § 3553(a)(1) and § 3553(a)(2)).

19        In addition to the physical injuries inflicted, the attack and its aftermath had a psychological

20   impact on S.L. and R.C.  S.L. told investigators that after the incident, she felt traumatized and slept

21   with a jack or knife nearby.  In 2012, she saw Jackson at a local courthouse on an unrelated matter; just

22   seeing him gave her chills and made her feel sick.  As noted in the PSR, victims S.L. and R.C., through

23   intermediaries, were threatened and offered money not to cooperate with the investigation.  PSR ¶ 14.

24   Both S.L. and R.C. expressed fear as a result of these communications.  Id.  Although the evidence did

25   not establish who was responsible for the attempted obstruction of justice, the victims never would have

26   been the objects of such threats had defendant Hammett and his associates not assaulted them in the first

27   place.

28   ///

## V.        GOVERNMENT'S RECOMMENDATION

The Government recommends that the Court sentence defendant Hammett to 70 months in prison, the low end of the applicable guidelines ranges, consistent with the Government's intent as expressed in the Plea Agreement.

Defendant Hammett engaged in violent conduct toward two victims.  The violence was unprovoked, directed at unsuspecting strangers, and motivated by racial animus.  The crime had an impact on the victims beyond physical injury.  Imposition of a guidelines sentence is appropriate because it will reflect the seriousness of the offense and communicate to the defendant and to others that civilized society has no place for violence based on opposition to interracial relationships or hatred of racial minorities.

The Government's recommendation differs from the PSR's proposed 80 months.  While both recommendations come within the applicable guidelines range, the Government submits that the low end would be sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, and provide just punishment and deterrence.  18 U.S.C. § 3553(a)(2).  The offense level as agreed to by the parties in this case and as calculated by the Probation Officer includes a three level upward adjustment for hate crime motivation, a four level increase for co-defendant Tyler's use of a crowbar, and a three level increase for injury to the victim.  Defendant Hammett's long and violent criminal history is fully reflected in his criminal history category and his resulting advisory sentencing range.  In addition, he (along with defendant Jackson) pleaded guilty early in the case, and earlier than co-defendant Tyler.

Thus, the Government recommends a sentence of 70 months incarceration, to be followed by three years of supervised release with the conditions recommended by the Probation Officer.  The Government joins the Probation Officer in recommending restitution of $175 to cover R.C.'s windshield replacement and a mandatory special assessment of $100.

The Government also recommends that the Court impose a fine of $5,000.  The Government notes that the defendant has a net worth of zero, and that the Probation Officer concluded that he would not be able to pay a fine.  PSR ¶¶ 71-72.  The defendant agreed in the plea agreement to pay a fine if one were imposed, however, and if the defendant is sentenced to a term of supervised release, he will have at

least three years in which to make fine payments.  A fine of $5,000 is below the guideline range for a

fine as determined by the Probation Officer. PSR ¶ 81.  The amount of restitution sought in this case,

$175, is not a significant amount, and a fine of $5,000 would not likely impair defendant Hammett's

ability to pay restitution. 18 U.S.C. § 3572(b).  As noted by the Probation Officer, the costs of

incarcerating and then supervising the defendant will be substantial, which is a statutory factor in

considering the imposition of a fine. 18 U.S.C. § 3572(a)(6).[1]  For these reasons, a fine in the amount of

$5,000 in warranted in this case.


Dated:  March 13, 2013                        Respectfully submitted,

                                              /s/ Benjamin Wagner
                                              BENJAMIN B. WAGNER
                                              United States Attorney


                                              /s/ Chiraag Bains
                                              CHIRAAG BAINS
                                              Trial Attorney
                                              Civil Rights Division

---

[1]  The Probation Officer referenced the imposition of costs of prosecution in the PSR, and guideline section 5E1.5. PSR ¶ 82.  While the costs of the sentence imposed are relevant to the imposition of a fine under section 3572(a)(6), it appears that the offense of conviction in this case is not one in which the costs of prosecution can be imposed as a penalty.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28