BENJAMIN B. WAGNER
United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:   (916) 554-2900

JOCELYN SAMUELS
Acting Assistant Attorney General
CHIRAAG BAINS
Trial Attorney
Civil Rights Division
U.S. Department of Justice
601 D Street, NW
Washington, DC 20530
Telephone:  (202) 514-5259
Facsimile:   (916) 514-8336

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>                    v.<br><br>PERRY SYLVESTER JACKSON,<br><br>                              Defendant. | CASE NO.  2:13-CR-011 JAM<br><br>GOVERNMENT'S SENTENCING MEMORANDUM<br><br>DATE: April 22, 2014<br>TIME: 9:45 a.m.<br>COURT: Hon. John A. Mendez |

## I.     **INTRODUCTION**

The Government respectfully submits this memorandum to inform the Court of the Government's sentencing recommendation as to defendant Perry Sylvester Jackson and the basis for that recommendation.  The defendant is scheduled to be sentenced on April 22, 2014.

Defendant Jackson was charged in a three-count indictment on January 16, 2013, for his role in a racially motivated assault against a white man and African American woman that occurred on April 18, 2011, in Marysville, California.  On December 17, 2013, he pleaded guilty to Count 2, violation of the Shepard-Byrd Hate Crimes Prevention Act, 18 U.S.C. § 249.  Co-defendant Billy James Hammett

pleaded guilty to Count 2 on the same day and was sentenced in this Court on March 25, to 87 months in prison.  Co-defendant Anthony Merrell Tyler pleaded guilty to Count 2 on March 11, 2014, and is scheduled to be sentenced on July 8, 2014.

The plea agreement entered into between defendant Jackson and the Government is an agreement pursuant to Rule 11(c) (1) (C), in which the parties agreed to a sentence of 57 months in prison, at the low end of a level 21, Criminal History IV.  (In this respect, the agreement is somewhat different than the agreement with Hammett, which was a Rule 11(c)(1)(C) agreement to a sentencing range, rather than, as here, to a particular sentence.)

As discussed further below, the Government and the defendant have stipulated to the applicable provisions of the Sentencing Guidelines, producing a total offense level of 21.  The Presentence Report ("PSR") calculates the defendant's criminal history category as V, and the corresponding sentencing guidelines range as 70 to 87 months.  The Probation Office recommends a downward departure under U.S.S.G. § 4A1.3(b)(1) on the grounds that a category V substantially over-represents the seriousness of the defendant's criminal history.  Jackson PSR ¶ 86.  As set forth below, the Government agrees.  The Probation Officer recommends a sentence of 60 months imprisonment.  For reasons explained herein, the Government recommends the agreed-upon sentence of 57 months.

## II.   SENTENCING PROVISIONS IN THE PLEA AGREEMENT

The Government and defendant Jackson have entered several stipulations as to sentencing in the Plea Agreement.  C.R. 44 (Plea Agreement, filed 12/17/2014).  As with the previous plea agreement involving co-defendant Hammett, those stipulations involve all the applicable guidelines, and are mirrored in the guideline calculations in the Presentence Report.  In Part VI.B of the Plea Agreement, the parties stipulated that the base offense level is 14 under U.S.S.G. § 2A2.2(a).  The parties further agreed to the addition of four levels under § 2A2.2(b)(2)(B) because a dangerous weapon—here, a crowbar—was used; three levels under § 2A2.2(b)(3)(A) because victim R.C. sustained bodily injury; and three levels under § 3A1.1(a) because the defendant intentionally selected the victim because of the actual or perceived race and color of any person.  The stipulated adjusted offense level, therefore, is 24.

In Part III.B.2 of the Plea Agreement, the Government agreed to recommend a three-level reduction if defendant Jackson clearly demonstrated acceptance of responsibility for his conduct under

U.S.S.G. § 3E1.1.  This reduction makes the agreed total offense level 21.

In Part VI.B.7 of the Plea Agreement, the parties indicated their belief that defendant Jackson's criminal history category is IV, but noted that if his criminal history is calculated as a category V, the parties agree that a category V overstates his criminal history, and the defendant should nonetheless be sentenced at the bottom of the range corresponding to a criminal history category IV, to 57 months.  Plea Agreement at VI.B.7.  As discussed below, the Probation Officer determined that the defendant's criminal history category is in fact V, but also concluded that a downward departure into the range corresponding to a category IV is warranted.  The parties agreed that a sentence of 57 months in prison is appropriate in this case.

The parties further agreed in Part VI.B of the Plea Agreement not to move or argue for any departure from the Sentencing Guidelines or any variance under United States v. Booker, 543 U.S. 220 (2005).  Defendant Jackson specifically agreed that a sentence within the applicable guidelines range would be a reasonable sentence and that he would not seek a sentence outside of the range based on 18 U.S.C. § 3553.

### III.      THE PRESENTENCE REPORT

In the PSR, the U.S. Probation Officer reviews the facts of the offense and calculates the applicable guidelines range.  Consistent with the stipulations in the Plea Agreement, the PSR calculates the adjusted offense level to be 24.  PSR ¶ 32.  The PSR includes a four-level increase for use of a weapon (a crowbar), and an additional three-level increase for injury to the victims.  PSR ¶¶ 25-26.  It also includes a three-level upward adjustment for hate crime motivation under section 3A1.1.  PSR ¶ 29. It credits the defendant with a three-level reduction for acceptance of responsibility.  PSR ¶¶ 21, 34-35. The PSR also reviews the defendant's prior criminal conduct and concludes that his criminal history category is V.  PSR ¶¶ 38-48.  Accordingly, the PSR determines that defendant Jackson's guideline imprisonment range is 70 to 87 months.  PSR ¶ 71.

The Probation Officer noted, however, that of the defendant's six convictions, five involve DUI and/or driving with a suspended license.  PSR ¶ 86.  (The sixth is a possession offense committed when Jackson was 18.)  She notes, therefore, that it appears a criminal history category V substantially over-represents the seriousness of Jackson's criminal history and that a downward departure is appropriate.

Id.  Ultimately, the PSR recommends a prison sentence of 60 months in prison and three years of supervised release, near the low end for a total offense level 21 and a criminal history category IV.  PSR ¶¶ 94-95.

The Presentence Report also notes that victim R.C. is due $175 for the cost of replacing his car's windshield, which defendant Tyler shattered during the attack.  PSR ¶¶ 19, 80.  The Probation Officer also recommends, therefore, restitution in the amount of $175, in addition to a $100 assessment.  PSR ¶¶ 77, 80, 96.

The Government has no objection to any statements of material fact or policy statements contained in, or omitted from, the PSR.  The Government agrees that the defendant is entitled to a three-level reduction for acceptance of responsibility.  As defendant Jackson timely notified the Government of his intention to plead guilty, permitting the Government and the Court to conserve resources, the Government now moves under § 3E1.1(b) for the full three-level reduction.

### IV.       § 3553(A) FACTORS

In sentencing the defendant, the Court must consider the factors listed in 18 U.S.C. § 3553(a), which are discussed in the PSR at ¶¶ 89-93.  Among the important factors are the nature and circumstances of the offense, the history and characteristics of the defendant, and, relatedly, the impact of the crime on the victims.  The Government provides the following information to assist the Court.

### A.       Salient Facts of the Offense of Conviction

The assault on the victims was described in detail in the Government's sentencing memorandum for co-defendant Hammett, C.R. 53, and the Government is aware that the Court has viewed the parking lot surveillance camera videotape of the incident.  Accordingly, the Government will not repeat the full description of the offense here.  As indicated previously, however, it is clear that defendant Jackson and his co-defendants' assault on the victims – a white man and an African American woman – was unprovoked and based on race.

What is worth noting with respect to this defendant is that the video shows defendant Jackson running up to the passenger side of the victims' car with his arm pulled back, and immediately punching victim R.C. in the head twice through the open window, before there was any chance of even an exchange of words.  PSR ¶ 9.  Jackson then opened the passenger side door and kicked victim R.C.



*Jackson (left) strikes victim R.C. through passenger window while Hammett (right) has R.C. and S.L.'s attention on driver's side*

R.C. then fled from the car, backpedaling into the parking lot.  PSR ¶ 9.  Victim S.L. got out of the driver seat and sought refuge inside the store.  PSR ¶ 10.  After R.C. attempted to prevent Hammett from then entering the driver's side of the stalled car, the three defendants then attacked R.C.  Id. Jackson landed at least three more full punches as Hammett and Tyler also assaulted R.C.  Id. The defendants pursued R.C. as he fled out of the surveillance camera's view.  Id.

R.C. sustained injuries, including abrasions to both knees and his right forearm, and paid $175 to replace his windshield.  PSR ¶ 11.  S.L. later said she sustained bruising to her chest, and stated that she is still afraid when people approach her in her car.  PSR ¶ 18.

**B.**      **History and Characteristics of the Defendant, Government's Motion for Departure**

Perry Jackson unquestionably engaged in violent behavior in the course of this racially motivated crime.  As the Presentence Report points out, Jackson's legs bear tattoos with the words "White Power," and publicly posted photos show him and others doing a fascist salute.  PSR ¶ 14.  Despite those facts, however, Jackson's history as recounted in the presentence report is not characterized by the sort of violent and racially motivated incidents that were common in co-defendant Hammett's background.

Hammett was convicted in 2006 of an unprovoked assault on a 72-year-old African American man.  The presentence report for Hammett indicated that he had made comments about hating "old people, blacks, and Jews" while walking in downtown Marysville, then approached a total stranger and assaulted him, causing serious injury.  In 2004, Hammett was arrested for punching a man and rendering him unconscious while a friend stabbed another person in the stomach with an object resembling a screwdriver or ice pick.  In 2005, Hammett was arrested for assaulting a man who was sitting in a truck. Hammett's criminal record included several other arrests or convictions involving weapons, theft,

1  violence, and intoxicated driving.  Hammett has white supremacist tattoos and had told a jail

2  classification officer as recently as 2012 that he was a skinhead gang member.

3        While Hammett and Jackson were both determined by the Probation Officer to have a criminal

4  history category of V, Jackson's criminal history is far less egregious, particularly in relation to the

5  offense of conviction in this case.  Jackson's record is nothing to be proud of, but there is no indication

6  of violence or of racial animus in his previous convictions.  Jackson's criminal history points are

7  generated by four DUIs (three of them misdemeanors); a fifth conviction for misdemeanor driving on a

8  suspended license; and a felony for possession of a controlled substance at age 18, for which he received

9  probation and a total of three days in jail (after a probation revocation).  PSR ¶¶ 39-44.

10        The Government realizes that Jackson clearly has a problem with alcohol and with complying

11  with supervision.  He has had multiple probation violations and was disciplined while in federal custody

12  in this case for possessing contraband alcohol. PSR ¶¶ 39, 41, 61.  Moreover, an arrest relating to a

13  domestic violence incident indicates that Jackson is not immune from violent behavior.  PSR ¶ 52.

14  Nonetheless, the totality of Jackson's criminal history is far less serious than Hammett's and is

15  significantly over-represented at a category V.  For those reasons, the Government joins the Probation

16  Officer in recommending a downward departure to a category IV, pursuant to U.S.S.G. § 4A1.3(b)(1).

17  PSR ¶¶ 85-86.  Following such a departure, the applicable sentencing guideline range would be 57-71

18  months.  Finally, while Jackson's own body bears indicia of racial animus, Jackson expresses some

19  regret over his white supremacist tattoos, and denies gang membership.  PSR ¶ 58.

20       **C.**     **Impact of the Offense on the Victims**

21        The impact on the victims is an important consideration under § 3553(a), particularly under

22  subsection (1) or (2).  See United States v. Christensen, 732 F.3d 1094, 1104 (9th Cir. 2013) (approving

23  the district court's consideration of victim statements about the "life-destroying impacts" of the

24  defendant's crime because the information reflected on the "intangible nature of [the defendant's]

25  conduct" and because it was relevant to evaluating the seriousness of the offense, the need to provide

26  deterrence, and the need to protect the public from the defendant); United States v. Rangel, 697 F.3d

27  795, 803-04 (9th Cir. 2012) (consideration of impact on victims is appropriate under § 3553(a)).

28        As noted in the Government's prior sentencing memorandum, in addition to the physical injuries

inflicted, the attack and its aftermath had a psychological impact on S.L. and R.C.  Victim S.L. told investigators that after the incident she felt traumatized and slept with a jack or knife nearby.  As noted in the presentence report, S.L. continues to feel fear, particularly when she is approached in a car.  PSR ¶ 18.

### V.       GOVERNMENT'S RECOMMENDATION

The Government recommends that the Court sentence defendant Jackson to 57 months in prison, the low end of the applicable guideline range following a departure from a criminal history category V to a category IV, consistent with the Government's agreement in the Plea Agreement.  The Government's recommendation is only three months below the Probation Officer's recommendation.

It is important to note that the total offense level of 21 in this case involved an increase of four levels for use of a weapon by co-defendant Tyler (the crow bar)(§ 2A2.2(b)(2)(B)); three more levels for injury to the victims, even though physical injury was not extensive (§2A2.2(b)(3)(A)); and three more levels for hate-motivated crime (§3A1.1(a)).  Each of those adjustments is fully warranted in this case, but the Government notes that the final adjusted offense level reflects a full accounting under the guidelines for the defendant's conduct in this matter.  A sentence at the low end of the corresponding guideline range is appropriate as to this defendant.  A sentence of 57 months, which is nearly five years, represents a far longer sentence than Jackson has ever faced before.  It reflects the seriousness of the offense and communicates to the defendant and to others that civilized society has no place for racially motivated violence.

Thus, the Government recommends a sentence of 57 months incarceration, to be followed by three years of supervised release with the conditions recommended by the Probation Officer.  The Government joins the Probation Officer in recommending restitution of $175 to cover R.C.'s windshield replacement and a mandatory special assessment of $100.

The Government also recommends that the Court impose a fine of $500.  This Court declined the Government's recommendation of a considerably larger fine as to defendant Hammett.  The Government notes that unlike co-defendant Hammett, however, Jackson does not have a net worth of zero.  Jackson has demonstrated a regular pattern of employment, and he does generate income. PSR ¶¶ 63-68.  The Government acknowledges that the Probation Officer concluded that given Jackson's other

commitments, it appears that Jackson would not be able to pay a fine.  PSR ¶ 69.  A fine of $500 is a

fraction of the low end of the applicable guideline fine range in this case, however.  PSR ¶ 78.  The

defendant agreed in the plea agreement to pay a fine if one were imposed, and if the defendant is

sentenced to a term of supervised release, he will have at least three years in which to make fine

payments.  Even a small fine of $500 would further the goals of section 3553(a) and send a continuing

message about the seriousness of the defendant's criminal conduct in this case.

Dated:  April 11, 2014                                    Respectfully submitted,

                                        By:   /s/ BENJAMIN B. WAGNER
                                              BENJAMIN B. WAGNER
                                              United States Attorney


                                              /s/ CHIRAAG BAINS
                                              CHIRAAG BAINS
                                              Trial Attorney
                                              Civil Rights Division