```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE EASTERN DISTRICT OF CALIFORNIA

 3                           ---o0o---

 4         BEFORE THE HONORABLE JOHN A. MENDEZ, JUDGE

 5

 6    UNITED STATES OF AMERICA,

 7          Plaintiff,

 8    Vs.                                 CASE NO. 2:13-CR-011 JAM

 9    PERRY SYLVESTER JACKSON,

10          Defendant.

11    _____/

12

13

14

15                           ---o0o---

16

17                     REPORTER'S TRANSCRIPT

18                  TUESDAY, APRIL 29TH, 2015

19                 RE:   JUDGMENT AND SENTENCE

20

21                           ---o0o---

22

23

24

25    Reported by:                   CATHERINE E.F. BODENE,
                                     CSR. No. 6926,  RPR
```

```
 1                          APPEARANCES

 2                            ---o0o---

 3


 4    For the Government:

 5              UNITED STATES ATTORNEYS OFFICE
                501 I Street, 10th Floor
 6              Sacramento, California   95814

 7              BY:   BENJAMIN B. WAGNER,
                      Assistant U.S. Attorney
 8

 9

10    For the Defendant:

11              REICHEL & PLESSER, LLP
                455 Capitol Mall, 8th Floor, Suite 802
12              Sacramento, California   95814

13              BY:   MARK J. REICHEL,
                      Attorney At Law
14

15

16

17                            ---o0o---

18

19

20

21

22

23

24

25
```

```
                                                                    1
 1                       SACRAMENTO, CALIFORNIA
 2              TUESDAY, APRIL 29TH, 2014 - 9:45 A.M.
 3                             ---o0o---
 4           THE CLERK:  Criminal S-13-11, United States versus
 5   Perry Jackson.
 6           MR. WAGNER:  Good morning, Your Honor.  Ben Wagner
 7   for the United States.
 8           THE COURT:  Good morning.
 9           MR. REICHEL:  Good morning, Your Honor.  Mark Reichel
10   with Mr. Jackson, Your Honor, who is present.  He's in
11   custody and we are ready to proceed.
12           THE COURT:  All right.  This is a continuation of the
13   sentencing hearing that we began last week.  At that time I
14   made a finding as to the advisory sentencing guideline that
15   applies to this sentence, ruled on the objections, and then
16   informed the defendant that I would not go along with the
17   11(c)(1)(C) plea which called for a sentence of 57 months,
18   that I intended to impose a sentence that was greater than
19   that, but most likely within the guideline range.
20           I gave Mr. Reichel and his client a week to decide
21   whether they want to go forward, or under the plea agreement
22   he does have his right to withdraw the plea.  So Mr. Reichel?
23           MR. REICHEL:  Your Honor, after consultation we've
24   decided to go forward.
25           THE COURT:  Okay.  Is that your decision as well,
```

2

1   Mr. Jackson?
2           THE DEFENDANT:  Yes, Your Honor.
3           MR. REICHEL:  To be clear, to go forward with the
4   plea.
5           THE COURT:  With sentencing?  You don't want to
6   withdraw your plea, correct?
7           THE DEFENDANT:  Yes.
8           THE COURT:  You want me to sentence you?
9           THE DEFENDANT:  Correct, Your Honor.  Yes.
10          THE COURT:  You understand the consequences of going
11  forward, and that would be that I'm going to impose a
12  sentence that is greater than the sentence called for by the
13  plea agreement.
14          Do you understand that?
15          THE DEFENDANT:  Yes, Your Honor.  Correct.
16          THE COURT:  Okay.  All right.
17          As set forth in the Presentence Report, again, to
18  reiterate, I found that the offense level is 21, the criminal
19  history category is a Roman Numeral V, and then the guideline
20  range is 70 to 87 months.
21          Okay.
22          Mr. Wagner, anything the government would like to say
23  before I impose sentence?
24          MR. WAGNER:  Very briefly, Your Honor.
25          Of course we're still bound by the plea agreement,

1   and we continue to recommend a sentence of 57 months.  I
2   understand from your comments last time you're inclined to go
3   above that, and my only comment with respect to that is that
4   although the range is now at a level V, 70 to 87 months, and
5   it appeared from your comments last time that you were not
6   agreeing with the parties' position and the probation
7   officer's recommendation of a downward departure to a
8   level -- to a criminal history category IV on the grounds
9   that the criminal history overrepresented the seriousness of
10  his criminal conduct.
11          And if that is the case, then we would recommend that
12  you not go above the low end of the range at a level V, which
13  is 70 months, for the reasons set forth in our earlier brief,
14  and I think also by the brief Mr. Reichel just filed.
15          We think there is a very significant -- not to
16  diminish the criminal history of Mr. Jackson, which is, as I
17  said earlier, nothing to be proud of.  It is quite
18  significantly different from the criminal history of
19  Mr. Hammett.  And I think a sentence at the low end -- again
20  our recommendation is 57 months -- but if you are going to
21  impose a sentence within the range of a 21, category V, we
22  would recommend that you not go higher than the low end of
23  the range.
24          I think there is a very significant difference
25  between the criminal histories of the two defendants.

4

1       THE COURT:  Other than that, do you think there is a
2  significant difference between the two defendants in terms of
3  their culpability in this specific crime?
4       MR. WAGNER:  I don't, no.
5       THE COURT:  Okay.
6       MR. WAGNER:  It is purely a product of kind of what
7  led up to the crime.  In terms of the conduct on the night in
8  question, I think they're substantially similar in terms of
9  their conduct.
10      THE COURT:  All right.
11      Mr. Reichel, anything you would like to say before I
12 impose sentence?
13      MR. REICHEL:  Your Honor, the court has reviewed the
14 sentencing memorandum I filed yesterday morning?
15      THE COURT:  I did.
16      MR. REICHEL:  Okay.  And the defendants's mother is
17 here.  Obviously, the defendant is here to allocute as well.
18 And his mother is here to verify everything that I have in my
19 memorandum because she's the one that provided me most of the
20 information.  She's been present throughout every court
21 appearance, from his initial arraignment to now.
22      And I don't know if the court would like to hear from
23 her, if it would help the court, if the points that I have
24 raised give the court cause to consider a sentence below the
25 guideline range because under 3553 I think these factors that

5

1  I set forth are relevant.
2         As we all know, the guidelines are just one of four
3  things for the court to consider.  I urge this court to take
4  the guidelines as one of the four, and the other factors that
5  I have set forth here, specifically the strange nature of the
6  fact he's a category V, the fact that I think --
7         THE COURT:  Why is that strange?
8         He's got four DUIs.  No matter what you may believe,
9  and you're right, it is different from Hammett in the sense
10 that Hammett had a prior incident involving a hate crime,
11 but -- I don't know.  It just -- I said it last time.  You
12 can't diminish or mitigate the fact that he's got an
13 incredible drinking problem, and then he gets into an
14 automobile and but for the grace of God hasn't killed
15 somebody.
16        MR. REICHEL:  I understand, Your Honor.
17        THE COURT:  So if you want to go down that road, you
18 obviously aren't going to convince me his criminal history is
19 minimal.  He's a danger.  He's an incredible danger.
20        It's a different type of danger, but he's an
21 alcoholic who then gets behind the wheel and, in effect,
22 carries a deadly weapon.
23        You know, the way the state courts treat DUIs just
24 makes me shake my head.  And I think we've got it right in
25 the federal system that we treat these things so seriously

6

1   that it ended up giving him a criminal history of V.
2           So I wouldn't go down that path because you're not
3   going to convince me.
4           MR. REICHEL:  Thank you very much.  I understand and
5   accept the court's guidance.
6           I would note the other things, that I think a lengthy
7   federal prison sentence, like I identified, is going to
8   result in Mr. Jackson being racially segregate.  And as a
9   result you'll take somebody, who I don't think is not really
10  part of that entire group, and I'm concerned that with this
11  conviction and going to federal prison for a long period of
12  time it is going to cause him to have pressure to join these
13  certain groups that I've identified.  And it's just not the
14  best thing for him.
15          I think he has extreme remorse.  He's an alcoholic.
16  He's acknowledged that.  He's now spent 25 or more months
17  basically on this charge in custody.  He has -- he has real
18  strong ties to the community and his family.
19          There is no one in his family, even his prior -- the
20  mother of two of his children, who has a bad thing to say
21  about him really.  He works very hard.  He's very loyal.
22  He's very supportive.
23          THE COURT:  The mother that has the restraining order
24  against him?
25          MR. REICHEL:  Your Honor, that's actually not the

1    woman I speak about.  That's the person who actually is his
2    significant other.  And that was entered by the court.  You
3    know, it wasn't at her request, Your Honor.  And they
4    continue to be very close since then.
5            But he is admired, and he's truly loved by everyone
6    in his family and friends as well.
7            And he's made a terrible mistake on the night in
8    question here.  He has suffered quite a bit already.  He's
9    going to suffer more.  He's going to federal prison, Your
10   Honor.  But I just believe that federal supervision is better
11   for Perry Jackson in this instance than a lengthy
12   incarceration.
13           I don't know if the court has any questions about
14   some of the things that were raised.  You know, there is a
15   strong difference between Mr. Hammett and the things
16   Mr. Hammett has done and established himself in his life.
17           I think when Mr. Hammett goes to federal prison,
18   he'll show them my sentencing memorandum to show people kind
19   of what a tough guy and where he belongs and who he is.
20           THE COURT:  Why is he hanging around with Hammett in
21   the first place?
22           MR. REICHEL:  Very bad decision.
23           THE COURT:  Mr. Jackson, you have to accept
24   responsibility.
25           MR. REICHEL:  He does.

8

1   THE COURT:  In effect, that's what I'm requiring you
2   to do.  I've read all of the mitigating circumstances.  I've
3   considered the 3553(a) factors.  But as I said last week,
4   it's an incredibly offensive crime.  You can't get away from
5   that.
6           What you do from this point forward is up to you.
7   But you made a number of mistakes, and you're going to get
8   punished for that.  I think you accept that.  But there isn't
9   anything that I've read or that's been presented to me that
10  warrants, in my view, a variance, a mitigation below these
11  guideline ranges.
12          I think the federal guidelines, even though they're
13  advisory, accurately reflect the horrendous nature of these
14  types of crimes.
15          I know you presented a lot of information to me, but
16  honestly, nothing has convinced me that I should go below the
17  guidelines.
18          MR. REICHEL:  Your Honor, I think what's important
19  for Mr. Jackson, and this is his chance before the court, for
20  the court in sentencing him understands this is an isolated
21  act he did that night.  And it is not who Perry Jackson
22  really is.  And I think that's extremely important to him for
23  this sentencing proceeding.
24          THE COURT:  Okay.  Mr. Jackson, anything you would
25  like to say?

9

1    THE DEFENDANT:  Yes, Your Honor.
2    I'm very remorseful.  I'm ashamed of my actions.  My
3    deepest apologies go out to Richard Chase and Sonja Lacey and
4    their families.
5    I made a lot of poor choices that night, Your Honor,
6    starting off with drinking, people, places and things.
7    Right?
8    I have an alcohol problem.  It took me out of
9    character by miles.  I'm in desperate need of a program.  I
10   need help.
11   I don't have no violent convictions.  That ain't who
12   I am.  Those ain't my ethics.  I work hard.  I support my
13   family.  I'm willing to help others of any race.  I can fill
14   your courtroom, Your Honor, with that proof.
15   Your Honor, I want to be a productive citizen to
16   society.  No.  Check that.  I want to be a good person.  I
17   want to be a good neighbor.  I want to be a good father, a
18   good employee, a good employer.  I can be successful, Your
19   Honor.  I know that.  I have no hate in my heart.
20   To everybody here involved over this matter of my
21   past behavior, you, Your Honor, Mr. Wagner, Mark, Julie, most
22   importantly my mom, I'm sorry.  I wish this would have never
23   happened.
24   Thank you for your time, Your Honor.
25   THE COURT:  All right.

1       THE DEFENDANT:  That's all.
2       THE COURT:  All right.
3          The matter having been submitted to the court the
4  court is prepared to impose sentence as follows.  Again, as
5  Mr. Reichel asked, the record should reflect that the court
6  did receive a memorandum since our last appearance.
7  Actually, there are two memorandums, one filed on April 25th,
8  2014, and then a second one, a sentencing memorandum -- an
9  additional sentencing memorandum filed April 28th, 2014.
10         The court has, as I indicated, taken into
11 consideration both the advisory sentencing guidelines and the
12 statutory sentencing factors found at 18 U.S.C. 3553.
13         As I've indicated, I don't believe there are any
14 factors that warrant a variance.  As I indicated last week as
15 well, I'm concerned also about a factor -- one of the factors
16 which is the need to avoid unwarranted sentencing disparities
17 among defendants with similar records who have been found
18 guilty of similar conduct.
19         Mr. Jackson has been found guilty of similar conduct
20 in this case as to his codefendant, Mr. Hammett, who was
21 sentenced to 87 months.
22         As I indicated last week, and again repeat this week,
23 I don't intend to impose a sentence of 87 months on
24 Mr. Jackson, taking into account that he does have a
25 different prior criminal history than Mr. Hammett.  And that,

11

1   I believe, does warrant a sentence within the guidelines, but
2   a sentence below what Mr. Hammett received.
3          That, I think, satisfies the need to avoid an
4   unwarranted sentencing disparity, but still satisfies the
5   need, as probation has provided in the Presentence Report, to
6   address the seriousness of this offense, provide just
7   punishment, promote justice, avoid deterrence and provide
8   correctional treatment opportunities to Mr. Jackson.
9          For those reasons -- for the reasons and for the
10  justifications set forth in the Presentence Report in
11  paragraphs 94, 95 and 96, and pursuant to the Sentencing
12  Reform Act of 1984, it is the judgment of the court that the
13  defendant, Perry Sylvester Jackson, is committed to the
14  custody of the Bureau of Prisons to be imprisoned for a term
15  of 70 months.
16         So I will impose a low end sentence.  I think it is
17  warranted in this case, but still within the guideline
18  sentence.
19         Defendant is ordered to pay a special assessment of
20  $100, payment to begin immediately.  I find the defendant
21  does not have the ability to pay a fine.  Imposition of a
22  fine is waived.
23         Mr. Wagner, the government did request that I impose
24  a fine as they did request of Mr. Hammett.  I just don't
25  believe a fine is appropriate in this case given that I

```
                                                              12
 1    increased the sentence as well so I will deny that request.
 2            Again, as I have indicated, I find that I don't
 3    believe Mr. Jackson has the ability to pay a fine so I am
 4    waiving the imposition of a fine.
 5            Defendant is ordered to pay restitution jointly and
 6    severally with Billy James Hammett and Anthony Merrell Tyler
 7    in the amount $175, payment to begin immediately.
 8            Restitution is to be sent to the clerk of the court
 9    who will forward it to the victim or victims as described in
10    the Victim Impact Section.  If incarcerated, payment of
11    restitution is due during imprisonment at the rate of not
12    less than $25 per quarter.  Payment shall be through the
13    Bureau of Prisons Inmate Financial Responsibility Program.
14    Interest is waived.
15            Upon release from prison, the defendant shall be
16    placed on supervised release for a term of 36 months.  Within
17    72 hours of release from the custody of the Bureau of
18    Prisons, the defendant shall report in person to the
19    probation office in the district to which he's released.
20            While on supervised release, the defendant shall not
21    commit another federal, state or local crime, shall not
22    possess a firearm, ammunition, destructive device, or any
23    other dangerous weapon, and shall not illegally possess any
24    controlled substances.
25            The defendant shall cooperate in the collection of
```

1   DNA as directed by probation, and shall comply with the
2   standard conditions which have been recommended by the United
3   States Sentencing Commission.  Those are found following page
4   22 of this Presentence Report.  All 13 standard conditions of
5   supervision are adopted and will be incorporated by reference
6   in their entirety into the court's sentencing order.
7          Further, the defendant shall refrain from any
8   unlawful use of a controlled substance.  The defendant shall
9   submit to one drug test within 15 days of release from
10  imprisonment and at least two periodic drug tests thereafter,
11  not to exceed four drug tests per month.
12         The court also adopts the special conditions
13  recommended by probation.  Those are found on page 21 of the
14  Presentence Report.  All seven special conditions will also
15  be adopted and incorporated by reference in their entirety
16  into the court's judgment and sentencing order.
17         I will recommend the defendant be incarcerated at an
18  institution in Northern California so he can be as close to
19  his family as possible.  But, again, it is only a
20  recommendation and the recommendation has to accord with the
21  Bureau of Prisons security classification and space
22  availability policies.
23         Mr. Jackson, I am also going to recommend you
24  participate in the 500 hour Bureau of Prisons Substance Abuse
25  Treatment Program.  Hopefully you can get the help you need,

14

1  at least start you on the right path through that program as
2  well.
3          It's only a recommendation, but hopefully the Bureau
4  of Prisons will adopt that recommendation.  In your case I
5  think it is particularly appropriate.
6          You do have a right to appeal.  If you desire to
7  appeal, you must file your Notice of Appeal in writing with
8  the court within 14 days of today's date.  If you cannot
9  afford an attorney for your appeal, the court will appoint
10 one for you.
11         I'm not sure if the waiver would apply since I did
12 not go along with the plea agreement so you do have appeal
13 rights if you want to pursue that.
14         All right.  Anything further?  Mr. Wagner?
15         MR. WAGNER:  Your Honor, our view is that the waiver
16 does still apply.  I was just looking at the language of it
17 so...
18         THE COURT:  Okay.  Anything further?
19         MR. WAGNER:  Nothing further.
20         Thank you, Your Honor.
21         THE COURT:  Mr. Reichel?
22         MR. REICHEL:  I believe there is nothing further,
23 Your Honor.  He has a period of time he did in state custody.
24 The charges were dismissed in favor of federal prosecution.
25 The BOP is required to give him credit for that as it wasn't

```
                                                                    15
 1   credited toward another sentence.
 2          If there should be some problem with that, I may
 3   contact Mr. Wagner and then possibly come back to the
 4   court.
 5          THE COURT:  Okay.  The Bureau of Prisons will
 6   calculate the remaining time.  Hopefully you will use that
 7   time wisely.
 8          When you do get out, you'll still be on supervision,
 9   Mr. Jackson.  Hopefully, as you said, you can resume a life
10   where you can be a productive member of society without the
11   influence of alcohol impeding your decisions.
12          Okay?
13          THE DEFENDANT:  Yes, Your Honor.
14          THE COURT:  All right.  Good luck.
15          MR. WAGNER:  Thank you.
16          MR. REICHEL:  Thank you.
17          (Off the record at 10:30 a.m.)
18                         ---o0o---
19
20
21
22
23
24
25
```

```
 1                    REPORTER'S CERTIFICATE

 2                          ---o0o---

 3
     STATE OF CALIFORNIA  )
 4   COUNTY OF SACRAMENTO )

 5


 6
            I certify that the foregoing is a correct transcript
 7
     from the record of proceedings in the above-entitled matter.
 8

 9

10                 IN WITNESS WHEREOF, I subscribe this
     certificate at Sacramento, California.
11

12

13      /S/_Catherine E.F. Bodene_____
            CATHERINE E.F. BODENE, CSR NO. 6926
14          Official United States District Court Reporter
```